# United States District Court
# Northern District of Indiana
# Hammond Division

| | |
|---|---|
| JOHN F. CASTRONOVO, personally and as Administrator of the estate of Sandra S. Castronovo, deceased<br><br>        Plaintiff and<br>        Counter-Defendant,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>        Defendant and<br>        Counter-Plaintiff.<br>_____<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>        Third-Party Plaintiff,<br><br>v.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA OWNERS INSURANCE COMPANY,<br><br>        Third-Party Defendant. | Civil Action No. 2:06-CV-142-JVB |

**OPINION AND ORDER**

This matter is before the Court on Defendant and Counter-Plaintiff National Union Fire Insurance Company's motion for summary judgment against Plaintiffs Castronovo (DE 82); Plaintiff's cross-motion for summary judgment against National Union (DE 127); and Third-Party Defendant Travelers Property Casualty Company's motion for summary judgment against

National Union (DE 100).  The Court heard oral argument on the motions on July 9, 2008.

## A.  Summary Judgment Standard

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995).  This notion applies equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56. *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir.1996). Indeed, the existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., Inc. v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003). Rather, the process of taking the facts in the light most favorable to the nonmovant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id*. at 648. "With cross-motions, [the court's] review of the record requires that [the court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Ins.*, 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)). Mindful of these standards, the court now turns to the factual basis for the parties' motions and then to their substance.

**B.  Background and Facts**

Sandra Castronovo died on February 4, 2003, as the result of an accident on February 3, 2003, at the intersection of US Highways 421 and 30 in Wanatah, Indiana.  She was stopped for a red light when the tractor trailer driven by Kenneth Lively struck her car, causing it to spin out of control and strike another semi.  Kenneth Lively was the employee of Doug Lavery, Ltd., acting in the scope of his employment, driving a semi tractor owned by Lavery, hauling a trailer owned by GE Capital Corp which GE had leased to Greif Brothers Corporation. At the time of the accident Lavery and Greif were operating under an oral agreement whereby each could use the other's trailers.

Plaintiff is the administrator of Sandra Castronovo's estate. Plaintiff initially sued Lively, Lavery, and GE in the underlying action (*Castronovo v. Lively,* 2:03-CV-248 (N.D. Ind. filed June 18, 2003)) but on March 27, 2004, added Greif as a defendant, claiming negligent entrustment, hiring and retention of Lively. Lively and Lavery were represented by David Abel, who had been hired by Owners Insurance, Lavery's primary insurer under a policy with limits of $1 million.  Greif was the named insured under a Travelers policy with limits of $2 million. David Cerven, hired by Travelers, represented Greif in the underlying action.  Greif was also the named insured under a $25 million National Union umbrella policy.  The Travelers' policy was listed in the Schedule of Underlying Insurance in the National Union policy.  The National Union policy followed form to (that is, covered the same risks as) the Travelers policy for excess coverage and also provided primary or "drop down" insurance for risks covered by the Travelers policy but not covered by any underlying insurance.

In November 2004 Plaintiff sent a settlement demand of $6.276 million to all defendants

3

in the underlying action. On February 25, 2005, Greif filed a motion for summary judgment in the underlying suit, which Castronovo, Lively and Lavery opposed on the grounds that there were factual issues as to whether Lively was a borrowed, joint, or statutory employee of Greif or was otherwise vicariously liable for Lively's actions.[1] On February 28 Cerven sent Travelers a copy of the Plaintiff's demand letter.

      The first documented knowledge National Union had of the underlying suit was an e-mail dated March 27, 2005, from Jeffrey C. Wood, Corporate Director of Risk Management for Greif, to David Bejbl of AIG Domestic Claims (National Union's claims administrator) to which he attached the summons and complaint in the underlying action. Wood explained that the claim concerned a truck owned by Lavery hired to deliver Greif products on a trailer leased by Greif and that at the time of the accident Lavery had already delivered the Greif products and had picked up a load for another customer which was being hauled on Greif's leased trailer. Wood stated that Sandra Castronovo had died in the accident and that the claim had significant value. He added: "from our perspective there was no negligence on the part of Greif but there is an argument that Greif's auto policy should be excess over the limits of Lavery ($1 million)." He closed by asking to be advised as to how Bejbl would like Greif to handle the claim from that point. *See* Ex. I to Pl's Statement of Genuine Issues of Material Fact (DE 104). On April 26, 2005, Steven Tracy, Director of Claim Services for Travelers, spoke with Michael Mangino, another employee of AIGDC. According to Tracy's note of the conversation, Mangino stated he did not want a copy of the file until after the motion for summary judgment motion was decided. AIGDC representatives, on behalf of National Union, continued to make inquiries of Travelers

---

[1]In its response brief Plaintiff abandoned the claim of negligent entrustment, hiring and retention articulated in the complaint.

and David Cerven regarding the progress of the summary judgment motion. On July 26 Craig Freedman of AIGDC asked Tracy to send him Travelers' file. AIGDC received the file on August 10, 2005. In his letter transmitting the file Tracy mentioned a mandatory settlement conference scheduled for August 18. On August 10, 2005, David Bejbl of AIGDC received a call from Jeffery Wood, Greif's risk manager asking if an AIGDC representative would attend the pretrial conference set for August 18. The settlement/pretrial conference was later converted to an oral argument on the summary judgment motion, which was also postponed.

Owners Insurance Company, the primary insurer of Lavery, hired coverage counsel, Robert Konopko, who began communicating with Travelers about whether Travelers would defend or provide coverage for Lively and Lavery. On June 24, 2005, Konopko wrote to Steven Tracy of Travelers inquiring whether it was Travelers' position that its policy issued to Greif did not provide coverage to Lively or Lavery for Plaintiff's claims against them in the underlying action. Tracy responded on June 30, 2005, that Travelers could defend Lively under a reservation of rights, if a demand to do so were made, but suggested that there was no coverage under the Travelers policy because Lively was not hauling Greif's load when the accident occurred. Owners filed a motion to intervene in the underlying action on July 15, 2005, and a complaint for interpleader on July 29. On August 10, 2005, Owners deposited $996,116, the remaining limits of its policy, with the court and asked to be absolved of any further duty to defend or indemnify Lively and Lavery.

On July 20, 2005, David Abel contacted Steven Tracy to learn Travelers' position on coverage for Lively. Abel noted that he had a copy of Tracy's June 30 letter to Konopko which indicated that Travelers had already determined its policy provided no coverage for Lavery. He

5

referred Tracy to interrogatory answers from Lavery explaining the oral agreement whereby Lavery could use Greif's trailers and set out his understanding that Travelers was taking the position that Lively would be covered under the Travelers policy only if he had been hauling a load for Greif at the time of the accident. Also in July Abel began negotiating a settlement agreement with Plaintiff's attorney. On August 3, 2005, Abel again wrote to Steven Tracy, asking for a definitive answer on whether Travelers would defend and indemnify Lively. He pointed out that the trial was scheduled to begin on September 19, 2005, and that a settlement conference was scheduled for August 18. Abel informed Tracy that if he did not have a reply by August 5, he would assume Travelers was declining to provide a defense for Lively and to indemnify him, and that he would advise Lively and Lavery (for whom, Abel noted, Travelers had already denied coverage) to take whatever steps they could to protect themselves. Abel's August 3 letter apparently crossed in the mail with a letter to him from Tracy indicating that Travelers' position depended on how the court ruled on Greif's summary judgment motion. Tracy alluded to the fact that Greif's leased trailer was not hauling a load for Greif when the accident occurred, but did not provide an unequivocal answer to Abel's question.

    On August 26 the Marshall County Superior Court No. 1, Probate Division, authorized Plaintiff, as the administrator of the estate of Sandra Castronovo, to enter into a consent judgment agreement for $6 million, whereby Lively and Lavery would assign their interests against applicable insurance carriers for the amount of the consent judgment in excess of the funds Owners had paid into court in the underlying action. The Consent Judgment Agreement was signed by the parties and was filed with the court in the underlying action on September 1, 2005. On September 7, 2005, the court approved the consent judgment and entered judgment for

6

the Plaintiff and against Lively and Lavery for $6 million.  National Union's first notice of the Consent Judgment Agreement came on September 12, 2005, in a letter from Greif's counsel.

Travelers later determined that Lively and Lavery were insureds under its policy, after receiving a letter dated October 7, 2005, from attorney James H. Ledman, who had been hired by National Union to review coverage for Lavery and Lively under the Travelers policy and the National Union umbrella policy.  Ledman concluded that as long as Lively and Lavery were permissive users of Greif's leased trailer at the time of the accident they were insured under Travelers' policy and Travelers should have agreed to defend and indemnify both of them when Owners interpleaded its policy limits and asked to be relieved of its duty to defend them. Ledman further opined that since Travelers had wrongfully declined to defend, Lively and Lavery were free to make any reasonable settlement with the Plaintiff to protect their own interests.  He also claimed that because National Union was never asked to defend Lively or Lavery and did not know about the proposed consent judgment until after it was approved, liability for any excess over Travelers' $2 million limit did not fall on National Union under the umbrella policy.  On October 18, 2005, Travelers paid Plaintiff its policy limits of $2 million. On October 24, 2005, the funds Owners had deposited with the court were released to the Plaintiff.  A balance of $3,003,883 remains unpaid.

In April 2006 Plaintiff filed the instant action against National Union, claiming that although National Union was advised of the dispute as to coverage with Travelers and advised of Plaintiff's demand for more than $6 million to settle the underlying suit, it failed to defend or provide coverage or investigate Plaintiff's claim, engaged in unfair claim practices, and breached its contract obligation of good faith.

7

National Union denied Plaintiff's claims and filed a counterclaim against Plaintiff for a declaration that it has no obligation to Castronovo as the assignee of Lively and Lavery under the umbrella policy because the insureds had breached certain policy conditions.  National Union also filed a third-party complaint against Travelers, asserting that Travelers had wrongfully denied coverage to Lively and Lavery and breached its duty to defend them in the underlying lawsuit. National Union claimed a right to recover from Travelers any amount National Union becomes obligated to pay with respect to the underlying consent judgment.[2]

**C.  Choice of Law**

In deciding what law should apply in a diversity case, a federal district court must apply the choice of law rules of the state in which it sits. *Am. EuroJean v. Dugan,* 20 F.3d 255, 260–261 (7th Cir. 1994).  Indiana's choice of law rule for contract actions calls for applying the law of the state with the most intimate contacts to the facts.  *Employers Ins. Of Wausau v. Recticel Foam Crop.*, 716 N.E.2d 1015, 1024 (Ind. Ct. App.1999).  With this much, the parties agree.  However, National Union argues that Ohio is the state with the most intimate contacts to the insurance policy at issue here, while Plaintiff maintains either that there is no difference between Indiana and Ohio law so that Indiana substantive law should apply (*See Barron v. Ford Motor Co. Of Canada, Ltd.,* 965 F.2d 195, 197 (7th Cir. 1992)); or, alternatively, that Indiana is the state with the most intimate contacts to the facts of this case.

---

[2]National Union also sued Owners Insurance Company in its third-party complaint. Owners has since been dismissed by stipulation of the parties.  Also, during oral argument, National Union repudiated its claim that Travelers had breached its duty to defend Lively and Lavery and stated its new position that Travelers, like National Union, had no duty to defend them because Owners had continued to provide their defense until after the Consent Judgment was entered.

The Court will apply the substantive law of Ohio.  The National Union policy was issued to Greif at Greif's headquarters in Delaware, Ohio, from AIG's Cleveland office through Greif's broker, the Hylant Group of Cincinnati.  By contrast, although the accident in the underlying suit occurred in Indiana, Indiana has no contacts to the negotiation and issuance of the insurance policy.

**(D) Analysis**

National Union insists that, by entering into the Consent Judgement Agreement without seeking National Union's consent, Lively and Lavery breached a material condition of the National Union policy.  Therefore, National Union argues, relying on *Champion Spark Plug Co. v. Fidelity and Casualty Co. of New York*, 687 N.E.2d 785, 793 (Ohio App. 6 Dist. 1996)*,* that it has no obligation to indemnify them or their assignee, the Plaintiff.

Section VI. F. 4. of the policy states:

> No Insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

It is undisputed that insureds Lively and Lavery never presented the Consent Judgment Agreement to representatives of National Union nor requested National Union's consent to the Agreement.  National Union never took any action which could be construed as consent to the Agreement.  Plaintiff, relying on *Sanderson v. Ohio Edison Co.*, 635 N.E.2d 19 (Ohio Sup.Ct. 1994)*, inter alia,* argues that National Union had a duty to defend and provide coverage to Lavery and Lively which it breached, and as a consequence, it has waived compliance with, and is estopped from asserting the consent clause as a bar to coverage.  National Union counters with

9

the claim that not only was National Union under no duty to defend Lavery and Lively but that Lavery and Lively never sought a defense or coverage from National Union until after the Consent Judgment agreement was a fait accompli.  Accordingly, the Court must first examine whether National Union breached a duty to defend or wrongfully denied coverage before it can determine whether their insureds' failure to obtain consent to the settlement agreement is a bar to coverage under the National Union policy.

The policy provisions concerning National Union's duty to defend are in Section  II. A.**:**

> We shall have the right and duty to defend any claim or suit seeking damages covered by the terms and conditions of this policy when:
>
> 1. The applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other underlying Insurance providing coverage to the **Insureds** have been exhausted by payment of claims to which this policy applies; or
>
> 2. Damages are sought for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** covered by this policy but not covered by any underlying insurance listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the **Insured.**

Here too Plaintiff and National Union disagree.  National Union maintains that Section II. A. 1 defines its duty to defend Lively and Lavery.  Under that section, the duty does not arise until the limits of the underlying coverage have been paid.  The limits of the coverage provided by Owners and Travelers were not paid until October 2005,  more than a month after the Consent Judgment was approved by the court in the underlying action.  Accordingly, National Union's duty to defend had not yet arisen when Lively and Lavery were negotiating the Consent Judgment Agreement with Plaintiff.  National Union reasons that it could not breach a duty that had not yet arisen, so that Plaintiff's attempt to use the alleged breach as justification for the

10

failure to secure National Union's consent to the Consent Judgment Agreement must fail.

Plaintiff counters that it is Section II. A. 2., rather than Section II. A. 1. which defines National Union's duty to defend Lively and Lavery in the underlying action. According to Plaintiff, Travelers' denial of coverage made the underlying suit one in which damages were being sought for injuries "covered by this policy but not covered by any underlying insurance" within the meaning of Section II. A. 2., triggering National Union's duty to defend.

Plaintiff's argument ignores the plain language of Section II. A. 2. Even assuming that Travelers' denial of coverage as underlying insurer could trigger National Union's duty to defend under Section II. A. 2. if Travelers were the only underlying insurer, in the instant case there are two underlying insurers, Owners and Travelers. The duty to defend under Section II. A. 2. of National Union's policy arises only when the injury is "not covered by . . . *any other* underlying insurance providing coverage to the insured." Owners did provide coverage to Lively and Lavery. Thus, the circumstances which would give rise to a duty on the part of National Union to defend Lively and Lavery under Section II. A. 2. did not exist.

The Court agrees with National Union that Section II. A. 1. did not create a duty on the part of National Union to defend Lively and Lavery. Under that section any duty to defend Lively and Lavery could not have arisen until after October 24, 2005, the point at which the policy limits of both underlying insurance policies had been exhausted by payment to the Plaintiff. Manifestly, Plaintiff cannot claim the breach of a nonexistent duty to excuse the insureds' failure to obtain National Union's consent to the settlement agreement, which was negotiated in July 2005, signed in August, and approved by the court in the underlying action in September, all before the policy proceeds were exhausted in October.

11

*American Motorists Insurance Company v. Trane Company,* 544 F. Supp. 669 (D.C. Wis. 1982), relied on by Plaintiff, is of questionable authority and the Court declines to follow it. The decision is a district court's effort to predict the law of Wisconsin, not Ohio. The court found that an excess insurer had a duty to defend the insured when the primary insurer had wrongfully denied coverage. However, *Trane* is distinguishable on its facts in that there no insurer was defending the insured and the insured had unequivocally tendered the defense to the excess insurer, whereas here Owners provided Lively and Lavery with a defense and no one asked National Union to defend Lively and Lavery in the underlying lawsuit. Moreover, it is highly doubtful that Wisconsin courts, much less Ohio courts, would follow *Trane*. *See Azco Hennes Sanco, Ltd. v. Wisconsin Ins. Security Fund*, 502 N.W.2d 887, 889 (Wis. Ct. App. 1993).

Having determined that National Union had no duty to defend Lively and Lavery in the underlying action, the Court now looks to the question of whether National Union's actions, or, more properly, its failure to act, amount to a denial of coverage to Lively and Lavery, such as would excuse Lively and Lavery from seeking National Union's consent to the settlement agreement. The undisputed evidence is that National Union knew Lively and Lavery were defendants in the same law suit as their named insured, Greif, on March 24, 2005, when Wood, Greif's risk manager, sent his e-mail to AIGDC representative Bejbl. National Union contends that Wood's observation that "there is an argument that Greif's auto policy should be excess over the limits of Lavery ($1 million)" means that Lavery's insurance might afford Greif primary insurance and that the Travelers policy might be excess with respect to Greif. However, even if we accept the Plaintiff's interpretation, that Wood was informing National Union that the Travelers policy might provide excess coverage to Lavery over the limits of Lavery's primary

12

insurance (implicating the National Union policy for any excess over Travelers' limits), this Court is unable to conclude that the mere suggestion by Wood that another party might have an excess claim against National Union amounts to a request for indemnity by Lively or Lavery requiring a response from National Union, failing which National Union should be deemed to have wrongfully denied coverage to Lively and Lavery.

Neither does the Court attach any significance to the facts that National Union might have requested Travelers' file earlier than it did, received the file several weeks before the court approved the Consent Judgment, might have concluded from a thorough review of the file that Livley and Lavery were insureds under its policy even if Greif succeeded on the motion for summary judgment, and that its umbrella policy might be implicated because of the Plaintiff's $6 million settlement demand.[3]   These facts do not add up to a request from Lively and Lavery to National Union for coverage.  National Union's failure to take an active role in the underlying law suit on behalf of Lively and Lavery does not amount to a denial of coverage.  The Court is unaware of any authority suggesting that these facts imposed any duty on National Union with respect to Lively and Lavery under the circumstances of this case.

Because National Union did not deny coverage to Lively and Lavery, Lively and Lavery had no excuse for failing to secure National Union's consent to the settlement agreement.  Under Ohio law, the violation of a clause in an insurance policy prohibiting voluntary payment is a

---

[3]Plaintiff claims that National Union knew that Lively and Lavery were claiming coverage under the Travelers policy by virtue of their monitoring of the summary judgment motion filed by Greif.  Plaintiff characterizes the motion for summary judgment as a dispute over whether Lively and Lavery were insureds under the Travelers policy.  While it is true that in opposing the motion Lively and Lavery argued that Lively was a statutory employee of Greif, which would make Greif vicariously liable for Lively's negligence, thereby implicating the Travelers policy, the Court does not agree that this can be construed as a request for coverage from Lively and Lavery  to National Union.

13

material breach of the contract that absolves the insurer of any responsibility to provide coverage, even if there is no showing that the insurer suffered prejudice. *Champion Spark Plug Co. v. Fidelity and Casualty Co. of New York*, 687 N.E.2d 785, 793 (Ohio App. 6 Dist. 1996). Accordingly, National Union is not liable to pay Plaintiff the balance of the consent judgment award.

**D. Traveler's Motion for Summary Judgment**

In its Amended Third Party Complaint against Travelers, National Union claimed that if the Court determined that National Union is obligated to provide coverage for the Consent Judgment in the underlying lawsuit, National Union is entitled to recover from Travelers any amounts it may be obligated to pay. Because the Court has determined that National Union is not obligated to provide such coverage, National Union's Third Party Complaint and Travelers' Motion for Summary Judgment on the Third Party Complaint are moot. The Court, on its own motion, dismisses the Motion and the Third Party Complaint.

**E. Conclusion**

For the foregoing reasons, the Court **GRANTS** National Union's motion for summary judgment against the Plaintiff with respect to all claims Plaintiff has asserted in its Complaint and on National Union's Counterclaim against Plaintiff (DE 82); **DENIES** Plaintiff's motion for summary judgment against National Union (DE 127); and **DISMISSES** National Union's Third Party Complaint against Travelers with prejudice; and **DISMISSES** Travelers' Motion for Summary Judgment on the Third Party Complaint (DE 100).

SO ORDERED on August 6, 2008.

    s/ Joseph S. Van Bokkelen  
Joseph S. Van Bokkelen  
United States District Judge